# CIRCUIT COURT OF THE CITY OF CHARLOTTESVILLE

Gregory Costan et al.

v.

Timothy Stratos et al.

Case No. 08-83

BY JUDGE PAUL M. PEATROSS, JR.

June 15, 2009

This Complaint for Equitable Relief for rescission of a deed conveying certain real estate in the City of Charlottesville, for injunctive relief, for an accounting of all assets transferred, and for restitution, was heard on the merits on April 1, 2009. The Holy Transfiguration Greek Orthodox Church of Charlottesville, Inc. ("Holy Transfiguration") was permitted to intervene in the lawsuit as that was the entity to which assets were transferred on or about December 13, 2007. The lawsuit was filed on March 12, 2008. After the April 1, 2009, hearing, counsel were given the opportunity to file briefs of legal authority, which the Court has received and reviewed.

*Defendants' Motion to Strike*

At the conclusion of the Plaintiffs' evidence, Defendant Holy Transfiguration made a Motion to Strike the Plaintiffs' evidence on the following grounds.

1. The Complaint is a derivative proceeding by three non-stock members of the American Greek Community ("AGC"), which Defendants claim is governed by § 13.1-672.1 of the Code of Virginia of 1950, as

amended, which provides that no shareholder may commence a derivative proceeding until: "1. A written demand has been made on the corporation to take suitable action."

Plaintiffs take the position that no demand needed to be made because such a demand would be futile. They say that demand need not be made where the wrongdoers were directors constituting a majority of the Board of Directors and further the wrongdoing Defendant directors (Stratos and Vames) were not "disinterested and independent." Plaintiffs cite the court to *Brehm v. Eisner*, 746 A.2d 244, 256 (Del. 2000), and to *Abella v. Universal Leaf Tobacco, Inc.*, 495 F. Supp. 713, 717 (E.D. Va. 1980).

There is contrary authority, which requires the written demand. *Firestone v. Wiley*, 485 F. Supp. 2d 694 (E.D. Va. 2007), notes the requirement of the Code Section and distinguishes several circuit court opinions. *Id.* at 701. As noted in that opinion, the 1992 amendment to § 13.1-672 was enacted "to impose an exceptionless demand rule and both of which [two older cases] relied simply on common law principles of demand futility." *Id.* at 701. The prior statute required a plaintiff to allege *"why demand was excused." Id.* at 702.

The issue could have been resolved by a written demand *after* December 13, 2007, such as Plaintiffs' Exhibit 24, a letter dated September 29, 2007, from Fotios Vavelidis, one of the Plaintiffs, the third member of the Board of Directors of AGC, and member in good standing of the AGC, who did in the letter demand proper action to be taken by the two alleged wrongdoing members of the Board of Directors. However, such a letter was not sent.

Plaintiffs allege in their Complaint at paragraph 25 that their counsel gave Defendants "notice in writing that they considered the Defendants' actions to have been illegal. . . ." in letters dated February 8 and 20, 2008, respectively. Those letters were not introduced into evidence at trial. In paragraph 26, Plaintiffs assert that Defendants rejected their request and were unwilling to modify their position. The evidence at trial is noted, *infra*, describing the action of the two directors in ignoring the By-Laws and state law. Therefore, Plaintiffs concluded in paragraph 27 the further demand would be futile.

Of further note, Defendants, in their Motion to Strike, rely on § 13.1-672.1, which governs stock corporations. Under § 13.1-601, this chapter is known as the Virginia Stock Corporation Act. AGC is not a stock corporation, but is a non-stock corporation. Therefore, under the Virginia Code, it is governed by § 13.1-801 *et seq.*, the Virginia Nonstock Corporation Act. There is no corresponding section requiring as a condition

precedent the written demand requirement of § 13.1-672.1. Therefore, the question becomes whether such a demand is required in this case as a condition precedent.

The only reference to a derivative action under the Virginia Nonstock Corporation Act is under § 13.1-828 of the Code. That Code section says a corporation's power to act may be challenged "derivatively" under paragraph B. 2. thereof. In *Richelieu v. Kirby*, 48 Va. Cir. 260 (1999), the Fairfax County Circuit Court concluded that demand was required in a derivative suit involving a nonstock corporation, the Humane Society of Fairfax County, even though the statute (the Virginia Nonstock Corporation Act) did not specifically require it.

The Court finds that the letter of September 29, 2007 (Exhibit 24) did put the Defendant directors on notice not to act as they did on December 13, 2007. The authority noted in the *Abella* case, *supra*, holds that, if directors who are charged with wrongdoing constitute a majority of the board, a shareholder may sue in a derivative capacity without making a formal written demand. *Id.* at 717. Under the Virginia Nonstock Corporation Act, further notice in the form of a demand is not necessary to file a Complaint. At the April 1, 2009, evidentiary hearing, Defendant Timothy Stratos testified that he believed AGC Corporation had been terminated and ceased to exist as of December 13, 2007. Further, the minutes of the Parish Council meeting of December 17, 2007, indicate that AGC had been dismantled and all properties were transferred to the new corporation. Therefore, any demand to take corrective action would have been futile. Thomas Vames, the other director and Defendant testified that he had no choice but to sign the deed as that is what the Metropolitan told him he had to do. For all these reasons, the requirement of a written demand was not necessary to maintain the suit and the Motion to Strike is overruled.

2. The second ground of the Motion to Strike was that the three plaintiffs were not in good standing with the corporation (AGC) because they had not paid dues for 2008 and 2009 to the Church, which was required by the agreement in 1974. In other words, to be a member in good standing with the corporation, one had to pay their dues timely to the Church. The suit was filed on March 12, 2008, and no dues had been paid as of that date for the year 2008 and none have been paid for 2009. Defendant Holy Transfiguration says one has to be a member at the time of the wrongdoing and continue to be a member during the pendency of the lawsuit. The statute says one only has to be a shareholder of the corporation at the time of the act that is the subject of the Complaint. All three plaintiffs were members of the corporation at the time

of the act complained of. However, as noted above, there is no requirement in the Code of Virginia under the Virginia Nonstock Corporation Act that nonstock members meet the standing requirements of § 13.1-672.1.

The Court finds that, even if § 13.1-672.1 was applicable, the three Plaintiffs were members in good standing at the time of the act, which is the subject of the Complaint and overrules the Motion to Strike.

3. The third ground of the Motion to Strike is that the failure to follow corporate By-Laws whereby a two-thirds vote of the General Assembly of AGC was needed to authorize the conveyance of corporate assets was not required because of the informality in conducting business of the corporation since 1944, which made such a vote a nullity. The action of the Parish Council was sufficient to uphold the deeds of conveyance and transfer of financial assets according to the Defendants. Since there were no minutes and no corporate records, no vote was necessary. However, there was formal action to elect a Board of Directors every two years. Tim Stratos testified he served on the Board of Directors on three different occasions. Thomas Vames testified that he had attended General Assembly meetings of the Parish and of the members of the AGC starting in 1984, which were two a year. He said, at about 50% of those meetings, there was an adjournment of the Parish meeting and the calling of a business corporate meeting. There was also a check of those members present who were in good standing who could vote, and there was a vote on capital projects overseen for the corporation like reconstruction of the church steps. Plaintiff's Exhibit 16 introduced into evidence shows Parish Council minutes noting the recognition and business of the AGC including going into separate meetings and communicating with the corporation about water leaks, keeping a post office box, and meetings of the General Assembly for the election of officers. The Court finds that any informality did not relieve the AGC from holding a meeting of the General Assembly to authorize the transfer of corporation property. The Motion to Strike is overruled.

### Ruling on the Merits of the Case

The By-Laws of the American Greek Community Corporation were introduced into evidence as Plaintiff's Exhibit 11. Those By-Laws define membership of the Community in Article I and provide in Section 1 that the power, duty, and responsibility of governing the affairs of the Community shall be vested in the General Assembly of the Community. Section 2 provides that all decision-making power is by majority vote of the General Assembly except that a two-thirds vote is necessary for the purchase, sale, or

encumbering of any property of the Community. (Article V, Section 2). Section 3 of Article I provides that the General Assembly may delegate decision-making power to the subordinate Board of Directors.

Article IV provides that General Assembly meetings will be held to exercise decision-making power and defines the members who make up of the General Assembly. It also describes how meetings will be called and the need for a "quorum" in order to have legal decisions.

Article V describes how the Board of Directors are elected, their powers, when they will meet, and who the officers of the corporation will be.

Article VII governs Community Elections of the Board of Directors and defines those members who will be qualified to vote.

At issue in this case is the transfer of certain real estate owned by AGC located at 100 Perry Drive in the City of Charlottesville and an investment property located at 533 First Street in the City. By deed dated December 13, 2007, AGC transferred this real estate to Holy Transfiguration. Tim Stratos, President of the American-Greek Community of Charlottesville, signed the deed. It was introduced into evidence as Plaintiff's Exhibit 5. The authority for Mr. Stratos to do so was a Resolution of Directors dated December 13, 2007, and introduced as Plaintiff's Exhibit 36.

Also at issue is the transfer of certain bank deposits identified in Plaintiff's Exhibits 37 and 39. Perry Geros testified that he was in charge of two corporate accounts, Exhibit 37, a checking account, which had a balance of $13,412.97 as of September 28, 2007, and a certificate of deposit (Exh. 39), which had a balance of $33,021.27 as of October 6, 2007. Mr. Peros and Mr. George Mastalas had signature power on the checking account and took no action to transfer or withdraw money from these accounts in 2007. Mr. Geros said it would take a three-fourths vote (perhaps two-thirds) to transfer the money. He did not learn of the transfer of these accounts until he went to the bank and was told they had been transferred. Mr. George Bacalakis testified that he was the individual who took the Resolution (Exhibit 36) to the bank as the President of Holy Transfiguration and had the accounts transferred to the name of the new corporation. The minutes of the meeting of Parish Council on December 17, 2007, in Plaintiff's Exhibit 16 indicate the net cash of the "old corporation" was $13,454. A letter was to be issued by Janie Stratos, Parish Council President, to authorize Mr. Bacalakis to transfer bank accounts. Those minutes confirmed that all properties of AGC had been transferred the new corporation.

On April 1, 2009, Tim Stratos testified he was President of AGC in December 2007 and that he was familiar with the By-Laws of the corporation. (Plaintiff's Exhibit 11.) He verified he was familiar with the Resolution of

Directors (Exhibit 36) and that he signed it. Mr. Stratos confirmed that there was no meeting of the General Assembly of the Community and that he had not received two-thirds approval of the members authorizing the transfer of the corporate property. Furthermore, he did not convene a meeting of the Board of Directors to vote on the Resolution. Mr. Stratos agreed that Fotios Vavelidis was secretary and the third director and the Resolution was not presented to him. He also agreed that no action had been taken to remove Mr. Vavelidis as director. Finally, he confirmed that there had been no oral or written unanimous consent of all three directors to transfer the assets of the corporation.

Thomas Vames, the second director also signed the Resolution. (Exhibit 36.) He testified he signed the letter of October 26, 2007 that the three directors were discussing the restructuring of the corporation to assure compliance with all laws and the adoption of the Uniform Parish Regulations. The letter stated that the directors would share the information obtained with the members of the Community. That was never done. Instead, Mr. Vames said the Metropolitan wanted it (assets transferred) before the end of 2007 and the directors never finished the investigation. He attended the December 9, 2007, meeting of the parish where questions were raised but no meeting of the General Assembly occurred and no vote was taken. That meeting was a meeting of the Parish Council and Father Monos to advise the parish that the Metropolitan had requested the dissolution of the AGC and the re-incorporation as the Holy Transfiguration Greek Orthodox Church. Regarding the transfer of assets of AGC, Mr. Vames confirmed no meeting of the General Assembly of the AGC occurred, no vote was taken, and no oral or written unanimous consent of the Board of Directors happened.

The relief being sought by Plaintiffs is as follows:

1. Declaration that the deed of December 13, 2007 (Exhibit 5) is null and void and of no effect;

2. That the money on deposit transferred by Mr. Bacalakis be refunded and that an accounting of those funds be made;

3. The Defendants be enjoined from taking any actions unless it is in compliance with the By-laws of the AGC and with state law.

The Defendants want the Resolution of the Directors and the deed of conveyance of the real estate to be recognized as a legal transfer of the assets of AGC to Holy Transfiguration. However, for those actions of Mr. Stratos and Mr. Vames to be legal, they must follow the law of the Commonwealth of Virginia and the By-Laws of the valid Virginia Corporation. The Court finds they have not done so and their actions should be rescinded and that the proper procedure be followed. Therefore, the Court rules that the deed is

declared null and of no effect. The proper legal procedure was not followed as required by law. It further orders a full refund and accounting by the Defendants of all other assets transferred and that Defendants be enjoined from taking any actions inconsistent with the By-Laws of AGC and of state law. The Plaintiffs are awarded their costs of court.

September 3, 2009

Before the Court is the Petition of Members of the American Greek Community of Charlottesville, who are petitioning for a Special General Assembly Meeting pursuant to § 13.1-840 of the Code of Virginia of 1950, as amended. That section permits this Court to order a meeting under certain conditions. The Court held a hearing on August 7, 2009, and the parties submitted legal authority as requested by the Court.

That statute provides that, if no annual meeting has been held within fifteen months of its last annual meeting, the Court may fix the time and place of a meeting, determine the members entitled to participate in the meeting, specify a record date for determining members entitled to notice and to vote at the meeting, prescribe the form and content of the meeting notice, and enter other orders necessary to accomplish the purpose of the meeting.

The last meeting of the General Assembly was in December 2006. There was an attempted meeting in December 2007, which was never held due to a dispute over signing a document prior to the scheduled meeting.

At the hearing on August 7, 2009, the Court raised the question as to the legal status of the corporation as of December 2007. As noted in the memoranda from both sides, the AGC was not legally terminated until September 2008. The issue at hand is a determination of the members entitled to vote at a new annual meeting as requested in the petition. Defendants take the position that no member who did not pay his or her dues to the Church in 2008 should be entitled to participate as they are not a member in good standing as defined by the By-Laws. Defendants assert that § 13.1-840 of the Code limits rights to members who have paid their dues up to date at the time of the filing of the petition. Article IV, Section 3, of the By-Laws of the AGC (1966) provide that a member in good standing is one who has "fulfilled his or her financial obligation [paying dues up to date] to the Community."

After a review of the legal authority briefed by each side, the Court concludes the legal existence of AGC continued until September 30, 2008, when it was terminated administratively. It was not dissolved or terminated under the law. Plaintiff says the corporation became "defunct" due to the action of Directors Stratos and Vames. *Black's Law Dictionary* defines

"defunct" as "Dead; extinct< defunct corporation." This Court has ruled on the actions of Mr. Stratos and Mr. Vames in its letter opinion of June 15, 2009, at "Ruling on the Merits of the Case," which is incorporated by reference in the opinion. The ruling was such action was improper and unlawful.

Based on those findings, the Court concludes that the members entitled to vote and the record date for determining members entitled to vote at the meeting is December 1, 2007. Those members have to be in good standing on that date pursuant to the By-Laws. Even though the corporation continued to exist, it had lost all of its stated purpose by the illegal transfer of its assets without consideration and was "defunct" as defined. The Court approves the Notice of Special Meeting of Members Admitted into evidence on August 7, 2009, as Plaintiffs' Exhibit 4 as the form to be used.